UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBIN DEXTER & DANIEL DEXTER )<br>    Plaintiff, )<br>v. )<br>  )<br>UNITED RECOVERY SYSTEMS, )<br>LIMITED PARTNERSHIP & JOHN DOE )<br>a/k/a JIMMY O'DELL )<br>    Defendants )<br>_____ ) | CIVIL ACTION<br><br>JURY TRIAL CLAIMED<br><br>FEBRUARY 24, 2011 |

## COMPLAINT

1. This is a suit brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* and includes pendent State law claims for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.* and for intentional infliction of emotional distress and also includes a claim for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. Plaintiff Robin Dexter is a natural person residing in Putnam, Connecticut.

3. Plaintiff Daniel Dexter is the husband of Plaintiff Robin Dexter and also resides in Putnam, Connecticut.

4. Defendant United Recovery Systems, Limited Partnership ("URS") is a Foreign Limited Partnership located in Texas that is engaged in the practice of debt collection in Connecticut and is licensed with the Connecticut Department of Banking as a consumer collection agency.

5. Defendant John Doe a/k/a Jimmy O'Dell (also referred to herein as "Mr. O'Dell") works as a debt collector with URS; Mr. O'Dell's true identity and location are not known by Plaintiffs at this time but are ascertainable through discovery.

6. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1367 and 1337, and Fed. R. Civ. P. 18(a).

7. This Court has jurisdiction over URS because it engages in debt collection within Connecticut.

8. Venue in this Court is proper, as the Plaintiffs are residents and the acts complained of occurred in this state.

9. Plaintiffs had entered into retail installment sales contract (the "Contract") to purchase an automobile (the "Vehicle"), and the Contract was assigned to GMAC.

10. GMAC repossessed the Vehicle and subsequently hired URS to collect the deficiency claimed by GMAC under the Contract (the "Account").

11. URS began contacting Plaintiffs in an attempt to collect the Account.

12. On or around the beginning of October 2010, Mr. O'Dell started calling Plaintiffs' residence and Plaintiff Robin Dexter's cell phone in an attempt to collect on the Account.

13. Plaintiff Robin Dexter answered some of Mr. O'Dell's calls and spoke with him regarding the Account, and in the course of some of those conversations, Mr. O'Dell told her that if Plaintiffs failed to pay the entire amount claimed, URS would garnish their wages, remove money from their bank account, garnish their tax refund, and that Plaintiffs' credit would be ruined. He also said that Plaintiffs should borrow against their 401k account or ask a relative for the money necessary to pay the full amount of the Debt.

14. Plaintiff Robin Dexter demanded that Mr. O'Dell cease contacting Plaintiffs.

15. Approximately a few days later, a URS representative referring to herself as Kimberly called and spoke with Plaintiff Robin Dexter regarding the Account; during that conversation, Kimberly told her that GMAC could put a hold on Plaintiffs' bank account if they failed to pay on the Account, and Plaintiff Robin Dexter explained that Plaintiffs could not afford to pay the amount demanded by URS, and she asked whether they could make incremental installment payments. Kimberly responded that she would have to speak with her supervisor and get back to her.

16. Kimberly never called Plaintiffs again, and approximately a week later, Mr. O'Dell placed multiple calls to Plaintiff Robin Dexter's workplace in an attempt to collect the Debt, and he continued to call her workplace despite having been specifically told by her that she was not allowed to take such calls at work.

17. Plaintiff Robin Dexter's work supervisor questioned her about the aforementioned calls, and she was forced to discuss her financial circumstances with her supervisor, which embarrassed her and caused her to worry that she might get fired as a result of such calls, especially since her workplace had a strict policy of prohibiting personal calls except in the case of an emergency, and this caused stress and anxiety, and it caused her blood pressure to spike.

18. Around that same time, Mr. O'Dell called Plaintiff Robin Dexter's cell phone, and Plaintiffs' son answered that call and spoke with Mr. O'Dell, and during that conversation, Mr. O'Dell kept insisting that he was speaking with Plaintiff Daniel Dexter even though he had been told repeatedly that it was Plaintiffs' son on the line.

19. Plaintiffs' son told Mr. O'Dell to cease calling that cell phone number, but Mr. O'Dell continued to call it.

20. URS called Plaintiff Robin Dexter's cell phone six times despite the fact that Plaintiff Robin Dexter never gave URS or GMAC permission to contact her on her cell phone.

21. Mr. O'Dell also left messages on Plaintiffs' home answering machine and Plaintiff Robin Dexter's cell phone. On those messages, he stated that he was with URS, a debt collector. Plaintiffs' children overheard some of those messages, and they asked Plaintiffs questions regarding the nature and subject matter of the messages, and Plaintiffs were forced to explain to their children that the messages related to the Vehicle that had been repossessed, and this caused Plaintiffs considerable embarrassment and shame.

22. Plaintiffs eventually changed their home phone number as a result of Mr. O'Dell's calls in the hope it would prevent Mr. O'Dell from calling their home and leaving messages that discussed the Account.

23. On or around the end of October 2010, Mr. O'Dell called and left a message for Plaintiff Daniel Dexter's sister, and on that message, Mr. O'Dell said he was looking to speak with Plaintiff Daniel Dexter's mother regarding the Debt, and he provided his phone number.

24. Plaintiff Daniel Dexter's sister gave Mr. O'Dell's contact information to her mother, and her mother called and spoke with Mr. O'Dell, and during that conversation, Mr. O'Dell told her that he was looking to speak with Robin Dexter for debt collection purposes and that she should tell her to call him.

25. Plaintiff Daniel Dexter's mother called Plaintiffs and spoke with Plaintiff Robin Dexter and asked her why Mr. O'Dell had involved her in the collection process and why he was looking to speak with her; both Plaintiffs became infuriated and ashamed when they learned that Mr. O'Dell had communicated with both Plaintiff Daniel Dexter's mother and sister regarding the Debt.

26. Plaintiffs frequently argued with each other because of Mr. O'Dell's collection activity and the stress it caused them.

27. By their collection activities as described above, URS and Mr. O'Dell violated the FDCPA and committed intentional infliction of emotional distress, and URS violated CUTPA and the TCPA.

WHEREFORE, the Plaintiffs seek recovery of actual damages (including emotional distress related damages) pursuant to 15 U.S.C. § 1692k and C.G.S. 42-110g; statutory damages pursuant to 15 U.S.C. § 1692k; attorney's fees and costs pursuant to 15 U.S.C. § 1692k and C.G.S. 42-110g; punitive damages pursuant to 42-110g; damages under 47 U.S.C. 227(b)(3); and such other relief as this Court deems appropriate.

**PLAINTIFFS ROBIN DEXTER & DANIEL DEXTER,**

By: _/s/_____
Daniel S. Blinn, ct02128
Matthew W. Graeber ct27545
dblinn@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408 Fax (860) 571-7457